UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBORA POO SOTO,

                Plaintiff,

-v-

THE CITY OF NEW YORK, New York City Police Department ("NYPD") Lieutenant STEPHEN LATALARDO, Officers LAZAR SIMUNOVIC, JOHN BAIERA, and JOHN DOES 1 through 5 (the names "John Doe" being fictitious, as the true names and shield numbers are not presently known), in their individual capacities,

                Defendants.

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

13 CV 8474 (LTS)

    DEBORA POO SOTO, by her attorney REBECCA HEINEGG as and for her complaint, does hereby state and allege:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate plaintiff's rights under the First, Fourth, and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983; and pendant claims under the Constitution of the State of New York, Article I, §§ 6, 11, and 12, and the laws of the State of New York.

2. Plaintiff DEBORA POO SOTO is a journalist who was documenting the Occupy Wall Street movement when she was unlawfully arrested.

3. Plaintiff DEBORA POO SOTO's rights were violated when officers of the New York City Police Department ("NYPD") unconstitutionally and without any legal basis seized, detained, and arrested her. Plaintiff's rights were further violated when she was subjected to excessive

1

force, in particular excessively tight handcuffing, which caused lasting damage to her hands and wrists. By reason of defendants' actions, plaintiff was deprived of her constitutional rights.

4. Plaintiff seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

5. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the First, Fourth, and Fourteenth Amendments of the Constitution of the United States.

6. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4).

7. This Court has supplemental jurisdiction over plaintiff's claims against defendants under the Constitution and laws of the State of New York because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

8. Pursuant to New York State General Municipal Law § 50-E, plaintiff filed a timely Notice of Claim with the New York City Comptroller on or about December 15, 2012. Plaintiff's claim was not adjusted by the New York City Comptroller's Office within the period of time provided by statute.

9. Venue is proper pursuant to 28 U.S.C. §1391(b) in that plaintiff's claims arose in the Southern District of New York.

10. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## PARTIES

11. Plaintiff at all times relevant to this action was a resident of Mexico City, Mexico.

12. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers.

13. Defendants NYPD Lieutenant STEPHEN LATALARDO, and Officers LAZAR SIMUNOVIC, JOHN BAIERA, and JOHN DOES 1 through 5 ("individual defendants") were at all times relevant herein officers, employees and agents of the NYPD. At all times relevant to this action, the individual defendants were acting under color of state law as agents, servants, employees and officers of the NYPD. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD.

14. The individual defendants are being sued in their individual and official capacities.

15. The true names and shield numbers of defendants JOHN DOES 1 through 5 are not currently known to plaintiff. However, all of said defendants are employees or agents of the NYPD.

16. Defendants' acts herein complained of were carried out intentionally, recklessly, negligently, and with malice and gross disregard for plaintiff's rights.

## STATEMENT OF FACTS

17. The incident alleged herein occurred at approximately 8:40 p.m. on September 15, 2012 in the vicinity of Broadway and Cedar Street, New York, and continued thereafter as set forth below.

18. At the time set forth in paragraph 17, plaintiff, who is a professional photographer, was near Zuccotti Park, taking pictures of an Occupy Wall Street ("OWS") demonstration.

3

19. As plaintiff stood on the sidewalk taking pictures, she observed police officers shoving protesters to get them to move.

20. As plaintiff turned and walked away, she was grabbed from behind by defendant STEPHEN LATALARDO.

21. Defendant LATALARDO pushed plaintiff against the wall, and then took her across the street.

22. Plaintiff explained that she was press and her credentials were in her backpack, but the individual defendants ignored her.

23. Defendant JOHN BAIERA handcuffed plaintiff extremely tightly with plastic flex-cuffs, and placed her in a police van.

24. Plaintiff informed the individual defendants several times that her handcuffs were too tight and hurting her, and requested that her handcuffs be loosened. The individual defendants ignored plaintiff's requests.

25. Plaintiff was eventually transported to the 7th Precinct.

26. At the precinct office, plaintiff repeatedly requested medical treatment for the pain in her hands from the individual defendants. However, plaintiff's requests were ignored, and plaintiff was not provided with any medical treatment.

27. When the handcuffs were eventually cut off plaintiff's wrists, the tightness of the handcuffs made it difficult for the police to get the scissors between the cuffs and plaintiff's skin, and plaintiff was further injured by this process.

28. Plaintiff was placed in a cell and eventually she was removed and strip searched.

29. After approximately five hours, plaintiff was released with a desk appearance ticket charging her with disorderly conduct.

30. In a sworn information, Officer LAZAR SIMUNOVIC made the following factual allegations against plaintiff:

> I observed the defendant standing in a group of approximately fifty (50) people on the sidewalk at the above location for approximately fifteen minutes. I observed that the defendant was blocking pedestrian traffic on the sidewalk in that I observed approximately three (3) individuals have to walk off of the sidewalk and across the street to move around the defendant and the group.
>
> I observed Deputy Inspector Edward Winski tell the defendant and the group of individuals to move multiple times from a location of approximately ten feet away. I observed the defendant refuse to move from this locations and stay put on the sidewalk. I then observed Deputy Inspector Winski again tell the defendant and the group to move from the location and give the defendant and the group warnings that if they did not move, they would be placed under arrest. I observed the defendant continue to stand on the sidewalk and refuse to move.

31. Officer SIMUNOVIC made the sworn statement quoted above, on the basis of which plaintiff was arrested and charged, with full knowledge that the statement was false.

32. Approximately one week later, plaintiff returned home to Mexico. Upon her return, plaintiff immediately went to an emergency room.

33. Plaintiff was diagnosed with post-traumatic muscular neuralgia, prescribed medication, and referred to specialists.

34. As a result of the excessively tight handcuffs applied by defendants, plaintiff has suffered from constant pain in her hands and wrists, radiating up into her arms and shoulders.

35. For several months following this incident, the pain in plaintiff's hands and wrists made it difficult to write and impossible to lift her camera.

36. Plaintiff continues to suffer from debilitating waves of pain in her hands and wrists.

37. As a result of her arrest in this matter, plaintiff also began to suffer from anxiety, depression, and nightmares, and to have difficulty sleeping.

38. On December 13, 2012, the charges against plaintiff were dismissed on motion of the District Attorney.

39. As a result of this incident, plaintiff suffered physical, psychological and emotional injuries, mental anguish, suffering, humiliation and embarrassment.

## FIRST CAUSE OF ACTION
## DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983

40. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

41. Defendants NYPD Lieutenant STEPHEN LATALARDO, Officers LAZAR SIMUNOVIC, JOHN BAIERA, and JOHN DOES 1 through 5, under color of state law, unlawfully seized and arrested plaintiff.

42. Defendants did not have probable cause to arrest plaintiff, nor was it objectively reasonable for defendants to believe that they did have probable cause to arrest plaintiff.

43. Defendants' decision to arrest plaintiff was based upon plaintiff's First Amendment-protected right to document, and not upon plaintiff's violation of any provision of the penal law.

44. Defendants, acting willfully and maliciously, commenced and continued a false prosecution against plaintiff, and caused her to be prosecuted.

45. Defendants did not have probable cause to commence and continue a criminal proceeding against plaintiff.

46. Plaintiff was unjustifiably deprived of her liberty for at least 5 hours as a result of the false arrest.

47. The criminal proceedings were terminated in plaintiff's favor.

48. By the conduct described above, defendants, under color of state law, subjected plaintiff to the foregoing acts and omissions without due process of law and in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution, through 42 U.S.C. § 1983, thereby depriving plaintiff of her rights, privileges and immunities, including, without limitation, deprivation of the following constitutional rights:

    a. Freedom to engage in protected speech, expression and association;

    b. Freedom from unreasonable seizures of her person, including but not limited to excessive force;

    c. Freedom from arrest without probable cause;

    d. Freedom from false imprisonment, meaning wrongful detention without good faith, reasonable suspicion or legal justification, and of which plaintiff was aware and did not consent;

    e. Freedom from the lodging of false charges against her by police officers;

    f. Freedom from malicious prosecution by police, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in plaintiff's favor;

    g. The enjoyment of equal protection, privileges and immunities under the laws.

49. Defendants' deprivation of plaintiff's constitutional rights resulted in the injuries and damages set forth above.

**SECOND CAUSE OF ACTION**
**RETALIATORY ARREST**
**FIRST AND FOURTEENTH AMENDMENTS THROUGH 42 U.S.C. § 1983**

50. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

51. By the actions described above, defendants arrested plaintiff in direct retaliation for both the content and viewpoint of plaintiff's speech, and did so without having probable cause to arrest plaintiff for any offense. The acts and conduct of the defendants was the direct and

proximate cause of injury and damage to plaintiff and violated her rights under the First and Fourteenth Amendments, as secured through 42 U.S.C. § 1983.

52. As a result of the foregoing, plaintiff suffered the injuries and damages set forth above.

**THIRD CAUSE OF ACTION**
***MONELL* CLAIM AGAINST DEFENDANT CITY OF NEW YORK
THROUGH 42 U.S.C. § 1983**

53. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

54. All of the acts and omissions by the individual defendants described above were carried out pursuant to policies and practices of the CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agency, the NYPD.

55. Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

56. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

57. The aforementioned customs, practices, procedures and rules of the CITY and the NYPD include, but are not limited to, arresting individuals in retaliation for photographing or filming the conduct of government actors, particularly police officers, arresting members of

the press attempting to document OWS, and subjecting journalists documenting the OWS movement to excessive force.

58. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following reports, news articles and civil rights actions filed against the CITY:

   a. On July 25, 2012, a national consortium of law school clinics, lawyers, professors and other legal experts released an extensively researched 132-page report documenting police abuses of OWS protesters.[1] The report notes that the NYPD arrested at least 44 journalists on 15 different dates, and documents at least eight instances of police violence against journalists covering OWS.[2]

   b. On September 24, 2011, a journalist stated that police threw him against a wall while he was attempting to interview protesters. The journalist stated that he was holding a microphone and wearing an ID badge at the time.[3]

   c. On September 24, 2011, a journalist who was arrested reported he met a woman who was arrested after she took a picture of the protests "in visible pain from the plastic handcuffs" while riding in a police van.[4]

   d. On October 14, 2011, a journalist stated he was struck in the shoulder without warning by a detective wearing a suit while taking video.[5]

   e. On November 15, 2011, a reporter stated that she witnessed officers throwing another reporter in a "choke-hold." The witnessing reporter also stated that police were not discriminating between press and protesters.[6]

---

[1] The Global Justice Clinic (NYU School of Law) and the Walter Leitner International Human Rights Clinic at the Leitner Center for International Law and Justice (Fordham Law School), Protest and Assembly Rights Project, *Suppressing Protest: Human Rights Violations in the U.S. response to Occupy Wall Street* (2012) *available at* http://chrgj.org/wp-content/uploads/2012/10/suppressingprotest.pdf.

[2] *Id.* at 87-88.

[3] John Farley, *Jailed for Covering the Wall Street Protests: Getting Arrested Alongside Citizen Journalists Gave Me a Taste of the Risks These Non-Professionals Take*, SALON.COM, Sept. 28, 2011 *available at* http://www.salon.com/2011/09/28/wall_street_protest_arrested/.

[4] *Id.*

[5] Tweet by Michael Tracey (Journalist), TWITTER (Oct. 14, 2011, 7:57 AM), https://twitter.com/mtracey/status/124816134380855296 (stating the allegation and linking to a picture of the detective allegedly responsible).

[6] Brian Stelter & Al Baker, *Reporters Say Police Denied Access to Protest Site*, NY TIMES , Nov. 15, 2011, *available at*  http://mediadecoder.blogs.nytimes.com/2011/11/15/reporters-say-police-denied-access-to-protest-site/.

    f. On November 17, 2011, a reporter stated in a video interview that an officer struck her in the arm with a baton as she attempted to film police as they were pushing a barricade into protesters while she was wearing a "clearly marked" press pass. Another reporter stated in a video interview that a third reporter was "slammed against a wall and taken away in handcuffs."[7]

    g. In November 2011, a number of New York news organizations, including the New York Times, the New York Post, the Daily News, the Associated Press, NBC Universal and WNBC-TV, Dow Jones, WCBS-TV, WABC-TV, Thomson Reuters, wrote a letter to the NYPD "to express their profound displeasure, disappointment and concern over the recent actions taken against the media. ... Over the past few months we have tried to work with [the Office of the Deputy Commissioner for Public Information] to improve police-press relations. However, if anything, the police actions of the last week have been more hostile to the press than any other event in recent memory."[8]

    h. On December 17, 2011, a journalist witnessed his colleague, a credentialed cameraman, get "punched in the kidney three times" by an NYPD officer.[9]

    i. On December 17, 2011, a journalist for The Guardian wearing a press ID stated was grabbed by an officer who "push[ed] his fist into [his] throat" despite the journalist's cries that he was press.[10] A New York Times journalist, upon speaking with the Guardian journalist, stated that the officer used the Guardian journalist as a "de facto battering ram to push back protesters."[11]

    j. On February 2, 2012, a number of New York news organizations sent another letter to the NYPD objecting to the ongoing police mistreatment of the press.[12]

---

[7] *Id*. (allegation at 2:05).

[8] Joe Pompeo, *New York media organizations demand meeting with Kelly, Browne about Zuccotti Park 'abuses' of the press*, Capital New York, Nov. 21, 2011 *available at* http://www.capitalnewyork.com/article/media/2011/11/4237084/new-york-media-organizations-demand-meeting-kelly-browne-about-zuccott.

[9] Tweet by Ryan Devereaux (Journalist, Guardian), TWITTER (Dec. 17, 2011, 3:58 PM), https://twitter.com/rdevro/status/148145075015254016 ("My colleague, a credentialed cameraman, was punched in the kidney three times. #D17 #ows").

[10] Tweet by Ryan Devereaux (Journalist, Guardian), TWITTER (Dec. 17, 2011, 12:49 PM), https://twitter.com/rdevro/status/148142787035004928; Tweet by Ryan Devereaux (Journalist, Guardian), TWITTER (Dec. 17, 2011, 12:53 PM), https://twitter.com/rdevro/status/148143806640959488 ("I repeatedly said I was trying to get back and he wouldn't let me go. Eventually he pulled me away to arrest me. I kept telling I was press.").

[11] Michael Powell, *The Rules on News Coverage Are Clear, but the Police Keep Pushing*, N.Y. TIMES , Jan. 2, 2012 *available at* http://www.nytimes.com/2012/01/03/nyregion/at-wall-street-protests-clash-of-reporting-and-policing.html.

[12] Joe Pompeo, *'Times' and 12 other news organizations write another letter to the NYPD, calling for answers in police treatment of the press*, Capital New York, Feb. 1, 2012 *available at* http://www.capitalnewyork.com/article/media/2012/02/5173979/times-and-12-other-news-organizations-write-another-letter-nypd-callin.

k.  On August 4, 2012, photographer Robert Stolarik, a regular photographer for The New York Times, was charged with obstructing government administration and resisting arrest after taking photographs of a brewing street fight at McClellan Street and Sheridan Avenue in the Bronx. Mr. Stolarik was taking photographs of the arrest of a teenage girl, when a police officer instructed him to stop doing so. Mr. Stolarik said he identified himself as a journalist for The New York Times and continued taking pictures. A second officer appeared, grabbed his camera and "slammed" it into his face, he said.[13]

l.  On September 15-17, 2012, five photojournalists reporting on Occupy Wall Street protesters were arrested in the course of their reporting. One photographer was arrested after attempting to take a picture of an officer giving a dispersal order on a sidewalk. Another was forced to the ground and detained, while another was shoved and blocked from taking a photo by a Lieutenant in the NYPD's Legal Bureau.[14]

m.  On October 12, 2012, thirteen news organizations again sent a letter to NYPD Commissioner Ray Kelly voicing concerns about the NYPD's continuing mistreatment of journalists covering the Occupy Wall Street demonstrations, specifically, the arrests, detention and mistreatment of photographers and reporters covering the demonstrations.[15]

n.  In addition, 10 press clubs, unions and other groups called for an investigation and formed a coalition to monitor police behavior going forward.[16]

o.  On January 16, 2013, a Brooklyn photographer was arrested and his pictures destroyed by NYPD officers after he filmed them stopping and questioning teenagers in Flatbush, Brooklyn. The National Press Photographers Association announced its interest in filing against the NYPD for the arrest.[17]

---

[13] *Times Photographer is Arrested on Assignment,* NY Times, Aug. 5, 2012, *available at* http://www.nytimes.com/2012/08/06/nyregion/robert-stolarik-times-photographer-is-arrested-while-on-assignment-in-the-bronx.html?_r=1.

[14] Christopher Robbins, *NYPD's pattern of harassing, arresting journalists continues*, Gothamist, Sept. 19, 2012, 1:28 PM, *available at* http://gothamist.com/2012/09/19/nypds_harassment_of_journalists_con.php.

[15] *Available at* https://www.nypressclub.org/docs/2012-10-01-nppa-nypd.pdf.

[16] Brian Stelter, *News Organizations Complain About Treatment During Protests*, NY Times, Nov. 21, 2011, *available at* http://mediadecoder.blogs.nytimes.com/2011/11/21/news-organizations-complain-about-treatment-during-protests/.

[17] Sandy Eller, *Charedi Photographer Claims Handcuffed by NYPD After Videotaping Flatbush Police Stop*, Vosizneias, Vos Iz Neias, Jan. 20, 2013 *available at* http://www.vosizneias.com/122118/2013/01/20/brooklyn-ny-charedi-photographer-claims-handcuffed-by-nypd-after-videotaping-flatbush-police-stop/.

11

p. On May 16, 2013, two Harlem residents were roughed up and arrested after they filmed NYPD officers conduct stop-and-frisks at a car checkpoint.[18]

q. June 20, 2013, NYPD officers arrested a photographer taking photographs of a Bushwick police station when he refused to tell the officers why he was taking the photographs. Shawn Randall Thomas was given two summonses for disorderly conduct. He has filed a complaint against officers alleging abuse and corruption.[19]

r. On August 27, 2013, NYPD officers arrested a Bronx teenager for filming as the officers attacked and threatened two young girls in a Bronx park. The teenager told the officers to leave the girls alone and began filming them with his phone. The officers began chasing him, tackled him and punched him before arresting him.[20]

s. *Lambert v. City of New York*, 153046-2011 (Sup. Ct., N.Y. Co.) (officers use excessive force against OWS protestor by affixing plastic handcuffs so tightly that it caused nerve damage, despite her repeated requests to the officers that the cuffs be loosened but were not);

t. *Bandele v. The City of New York*, 07 CV 3339 (MGC) (S.D.N.Y.) (The plaintiffs -- Lumumba Bandele, Djibril Toure and David Floyd -- say they were arrested while videotaping two arrests in Bedford-Stuyvesant, Brooklyn, on February 9, 2005. "In trying to stop the police from violating the rights of others, they had their rights violated," said Kamau Franklin, a lawyer with the Center for Constitutional Rights.)[21]

u. *Carneval v. The City of New York*, 08 CV 9993 (DAB) (AJP) (S.D.N.Y.) (A Manhattan photographer was arrested after filming NYPD officers in the East Village as they seized and loaded bikes, which had been locked to lampposts and parking meters, into a police van. After the photographer began filming and discussing the removals with another man, a plainclothes officer asked him for identification. When the photographer stated that he had the right to film, the officer led him to a police car, examined his ID, then arrested him.)[22]

---

[18] Jeff Mays, *'Professional Agitators' on NYPD 'Wanted' Flier Arrested After Filming Stop*, DNA Info, May 21, 2013 *available at* http://www.dnainfo.com/new-york/20130521/central-harlem/professional-agitators-on-nypd-wanted-flier-arrested-after-filming-stop.

[19] Meredith Hoffman, *Photographer Arrest Taking Pictures of Police Station House*, DNA Info, June 20, 2013 *available at*  http://www.dnainfo.com/new-york/20130620/bushwick/photographer-arrested-taking-pictures-of-police-station-house-bushwick.

[20] Jennifer Cunningham, *Teens say they were beaten by cops in Bronx park*, NY Daily News, Aug. 29, 2013 *available at* http://www.nydailynews.com/new-york/bronx/teens-mauled-cops-article-1.1440394#ixzz2eVh68jgw.

[21] *Metro Briefing: New York; Manhattan: Lawsuit Against The Police*, NY Times, April 27, 2007,  *available at* http://query.nytimes.com/gst/fullpage.html?res=9C02E2DD123EF934A15757C0A9619C8B63.

[22] Colin Moynihan, *City Settles with Two Arrested After Police Confrontation*, NY Times, March 31, 2010, *available at* http://cityroom.blogs.nytimes.com/2010/03/31/city-settles-with-pair-arrested-after-police-confrontation/.

59. The existence of the above-described unlawful *de facto* policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and the CITY, including, without limitation, Commissioner Raymond Kelly.

60. All of the foregoing acts by the individual defendants deprived plaintiff of federally protected rights, including, but limited to, the constitutional rights enumerated in paragraph "45" above.

61. The CITY knew or should have known that the acts alleged herein would deprive the plaintiff of her rights, in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution.

62. The CITY is directly liable and responsible for the acts of the individual defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulation of the CITY and NYPD, and to require compliance with the Constitution and laws of the United States.

63. Despite knowledge of such unlawful *de facto* policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the CITY, including Commissioner Raymond Kelly, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate

indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

64. The aforementioned CITY policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned CITY policies, practices and/or customs, the individual defendants felt empowered to conduct a retaliatory arrest and seizure.

65.  Plaintiff's injuries were a direct and proximate result of the CITY and the NYPD's wrongful *de facto* policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

### FOURTH CAUSE OF ACTION
### FALSE ARREST UNDER THE LAWS OF
### THE STATE OF NEW YORK

66. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

67. By the actions described above, defendants caused to be falsely arrested or falsely arrested plaintiff, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

68. As a result of the foregoing, plaintiff suffered the injuries and damages set forth above.

## FIFTH CAUSE OF ACTION
## ASSAULT AND BATTERY
## UNDER THE LAWS OF THE STATE OF NEW YORK

69. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

70. By the actions described above, defendants did inflict assault and battery upon plaintiff. The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

71. As a result of the foregoing, plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## SIXTH CAUSE OF ACTION
## INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## UNDER THE LAWS OF THE STATE OF NEW YORK

72. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

73. By the actions described above, defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

74. As a result of the foregoing, plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

### SEVENTH CAUSE OF ACTION
### NEGLIGENCE
### UNDER THE LAWS OF THE STATE OF NEW YORK

75. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

76. The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

77. As a result of the foregoing, plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

### EIGHTH CAUSE OF ACTION
### VIOLATIONS OF THE CONSTITUTION OF THE STATE OF NEW YORK

78. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

79. Defendants' conduct alleged herein breached the protections guaranteed to plaintiff by the New York State Constitution, Article I, §§ 6, 11, and 12, including the following rights:

    a.   Freedom from deprivation of liberty without due process of law;

    b.   Freedom from false imprisonment, meaning wrongful detention without good faith, reasonable suspicion or legal justification, and of which plaintiff was aware and did not consent;

    c.   The enjoyment of equal protection, privileges and immunities under the laws.

80. Defendants' deprivation of plaintiff's rights under the New York State Constitution resulted in the injuries and damages set forth above.

## NINTH CAUSE OF ACTION
### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK FOR VIOLATIONS OF THE LAWS OF THE STATE OF NEW YORK

81. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

82. The conduct of the individual defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to Plaintiff pursuant to the state common law doctrine of respondeat superior.

83. As a result of the foregoing, plaintiff suffered the injuries and damages set forth above.

## TENTH CAUSE OF ACTION
### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION, AND TRAINING UNDER THE LAWS OF THE STATE OF NEW YORK

84. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

85. Defendant CITY negligently hired, screened, retained, supervised, and trained defendants. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

86. As a result of the foregoing, plaintiff suffered the injuries and damages set forth above.

## JURY DEMAND

87. Plaintiff demands a trial by jury in this action on each and every one of her damage claims.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

    a.      That she be compensated for violation of her constitutional rights, pain, suffering, mental anguish, and humiliation; and

    b.      That she be awarded punitive damages against the individual defendants; and

    c.      That she be compensated for attorneys' fees and the costs and disbursements of this action; and

    d.      For such other further and different relief as to the Court may seem just and proper.

Dated:      New York, New York
                 May 29, 2015

                                                      Respectfully submitted,

By:      _____/s/_____
           Rebecca Heinegg
           *Attorney for the Plaintiff*
           42 Broadway, Suite 12-122
           New York, New York 10004
           t: (212) 227-2303
           f: (212) 320-0230