UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

DEBORA POO SOTO,

       Plaintiff,

  -v-                                                    No. 13 CV 8474-LTS-JLC

THE CITY OF NEW YORK, et al.,

       Defendants.

-----------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

Plaintiff Debora Poo Soto, who was arrested on September 15, 2012, in connection with Occupy Wall Street ("OWS") demonstrations in downtown Manhattan, brought this action under 42 U.S.C. § 1983, alleging violations of her civil rights. (See docket entry no. 35 (Second Amended Complaint ("SAC")).) The Amended Complaint names as defendants the City of New York, New York City Police Department ("NYPD") Officer Lazar Simunovic, NYPD Lieutenant Stephen Latalardo, and NYPD Officer John Baiera (collectively, "Defendants"). The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331.

Before the Court is Defendants' motion for summary judgment as to all of Plaintiffs' claims. (Docket entry no. 72.) The Court has carefully considered the parties' submissions and, for the following reasons, the motion is granted as to Plaintiff's retaliation claim under the First Amendment and her claim for municipal liability, and otherwise is denied.[1]

---

       1          Plaintiff has voluntarily withdrawn her claims for intentional infliction of emotional distress and negligent infliction of emotional distress, her claims under the Equal Protection Clause, and her claims under the New York State Constitution. (Docket entry no. 86, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion

BACKGROUND

The following facts are drawn from the parties' statements of undisputed material fact submitted pursuant to Local Rule 56.1.[2]

As an initial matter, the parties have both submitted video recordings, allegedly from the area in question, in connection with the instant motion. (See docket entry no. 74 (Declaration of Joy T. Anakhu ("Anakhu Decl.")), Ex. N; docket entry no. 84 (Declaration of Rebecca Heinegg ("Heinegg Decl."), Ex. 1.)  Defendants' video is described as "video produced by plaintiff" in connection with this litigation, and is authenticated only by Defendants' attorney, who has no firsthand knowledge of the video's origins.  (Anakhu Decl. ¶ 15.)  Plaintiff's video is "the video identified as P059, provided to Defendants on December 10, 2014," in connection with this litigation, and is authenticated only by Plaintiff's attorney, who has no firsthand knowledge of the video's origins.  (Heinegg Decl. ¶ 3.)  In order to be admissible as evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  The Second Circuit has required authentication of video evidence "on the same principles as still photographs."  Mikus v. U.S., 433 F.2d 719, 725 (2d Cir. 1970); see also Leo v. Long Island R. Co., 307 F.R.D. 314, 323-26 (S.D.N.Y. 2015) (holding that videos are not self-authenticating and therefore require authentication testimony). The Court finds that neither video has been authenticated by testimony sufficient to satisfy Federal Rule of Evidence 901, and the Court will not consider the videos in connection with the instant motion.  See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 269 F.3d 114, 123 (2d Cir.

---

for Summary Judgment, at 22.)  These claims (Counts Six, Seven, Eight, Nine, and Ten of the SAC) are dismissed accordingly.

[2]   See Defendants' Rule 56.1 Statement ("Def. 56.1") (docket entry no. 73); Plaintiff's Response to Defendants' Rule 56.1 Statement ("Pl. 56.1") (docket entry no. 85).

2001) ("It is appropriate for a district court ruling on summary judgment to consider only admissible evidence.").

Soto is a freelance journalist who attended an OWS demonstration in lower Manhattan on September 15, 2012. (Def. 56.1 ¶¶ 4-5.) At approximately 8:40 p.m., Soto arrived at the corner of Broadway and Cedar Street. (Def. 56.1 ¶ 16.) A number of OWS protesters were also present on the corner. (Def. 56.1 ¶ 17.[3])

Defendant Latalardo was present on the corner along with a number of other NYPD officers. (Def. 56.1 ¶¶ 26-36.) Latalardo testified that he issued several warnings for those present in the area, including Soto, to disperse. (Def. 56.1 ¶¶ 29, 32.) However, Latalardo was not certain that Soto heard his instructions. (Pl. 56.1 ¶ 29.) Soto testified that she did not hear any instructions to disperse. (Pl. 56.1 ¶ 29.) Latalardo testified that, while he was giving instructions to disperse, Soto came close to him and raised her camera to his face. (Def. 56.1 ¶¶ 33-34.) Soto disputes this version of events, stating that she did not approach any police officer, and remained several feet from the officers at all times. (Pl. 56.1 ¶¶ 33-34, 44.) Soto was arrested on the sidewalk shortly after the orders to disperse were given. (Def. 56.1 ¶¶ 36-37.)

After her arrest, Soto was placed in plastic handcuffs. (Def. 56.1 ¶ 59.) Soto complained to officers at the time about the tightness of her handcuffs. (Def. 56.1 ¶ 68.) Soto later sought medical treatment for wrist injuries, and was diagnosed with post-traumatic muscular neuralgia and tendonitis. (Pl. 56.1 ¶¶ 95, 98.)

---

[3]   Although Plaintiff disputes the Defendants' characterization of the crowd of demonstrators based on the video evidence on which Defendants rely (Pl. 56.1 ¶ 17), Plaintiff does not dispute that protesters were present on the corner (see docket entry no. 86, Pl.'s Mem. of Law in Opp., at 2).

D<small>ISCUSSION</small>

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment where that party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A party that is unable to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will not survive a Rule 56 motion. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating the absence of a material fact, and the court must be able to find that, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993). For the purposes of summary judgment motion practice, a fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted). "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). "As to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the nonmoving party's case." Nora Beverages, 164 F.3d at 742.

Plaintiff's Claim for False Arrest

Defendants argue that probable cause existed for Plaintiff's arrest, and that her claim for false arrest must therefore fail as a matter of law. In order to establish probable cause, "the facts and circumstances within the officer's knowledge and of which they had reasonably trustworthy information [must be] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been, or is being committed by the person to be arrested." Dunaway v. New York, 442 U.S. 200, 208 (1979).

Defendants first argue that there was probable cause to arrest Plaintiff for disorderly conduct. Section 240.20 of the New York Penal Law ("N.Y.P.L.") defines various disorderly conduct offenses. Section 240.20(5) provides that one "is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof ... [he or she] obstructs vehicular or pedestrian traffic." The Second Circuit, in interpreting Section 240.20(5), has required a showing that the putative offender was "actually and immediately blocking" the pedestrian or vehicular traffic in question. Zellner v. Summerlin, 494 F.3d 344, 372 (2d Cir. 2007). Here, the evidence submitted by the Defendants is insufficient to establish, as a matter of law, that there was probable cause to believe Soto was personally blocking traffic. The evidence proffered by Plaintiff that a substantial number of NYPD officers and other members of the public were also present in the intersection at the time of Plaintiff's arrest provides a sufficient basis for a reasonable jury to conclude that there were no grounds for the police to believe that Plaintiff personally intended to cause public inconvenience, or that she actually obstructed any traffic.

Defendants next argue that there was probable cause to arrest Plaintiff under N.Y.P.L. Section 240.20(6), which provides that one "is guilty of disorderly conduct when, with

intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof ... [he or she] congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse."  The evidence adduced by the parties demonstrates that there is a material factual dispute as to whether Soto ever heard or received an order to disperse, making a determination as to whether there was probable cause to arrest Soto for this offense inappropriate as a matter of law.  Latalardo testified that he gave such an order, but that he was not sure whether Soto was in earshot when it was given and therefore did not know for certain that Soto received an order to disperse.  Soto, for her part, testified that she did not hear any order to disperse.  A reasonable jury could credit Plaintiff's evidence and find that there was no basis for the police to conclude that Soto had received a lawful order to disperse, and therefore no probable cause to arrest her.

Finally, Defendants argue that there was probable cause to arrest Plaintiff for obstruction of governmental administration.  N.Y.P.L. Section 195.05 provides (as relevant here) that one "is guilty of obstructing governmental administration when he [or she] intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act."  The New York Court of Appeals has made it clear that an individual violates the statute only by the means specified in the statute, which "requires as an element of the crime that the accused act by one of three methods: (1) 'intimidation,' (2) 'physical force or interference,' or (3) 'any independently unlawful act.'"  People v. Case, 42 N.Y.2d 98, 102 (1977).  As shown above, there is insufficient evidence to establish as a matter of law that Plaintiff was committing an independent unlawful act, such as failure to disperse.  Defendants' argument for probable cause

here is therefore primarily based on Soto's alleged interference with Latalardo; he testified that she interfered with his performance of his duties by raising her camera and hands.  Soto's testimony contradicts Latalardo's version of events, however, and describes a more passive presence documenting the protest.  A reasonable jury could credit Soto's testimony and conclude that there was not probable cause to believe Soto was interfering with police officers in violation of Section 195.05.  See Mesa v. City of New York, 2013 WL 31002, at *13-14 (S.D.N.Y. Jan. 3, 2013) (denying motion for summary judgment where parties disagreed over photographer's distance from police because the dispute was material as to the existence of probable cause).  For these reasons, Defendants have failed to establish as a matter of law that there was probable cause to arrest Soto.

        Defendants also argue that summary judgment is warranted on Plaintiff's claims for false arrest because the individual officers are entitled to qualified immunity.  "An officer is entitled to qualified immunity against a suit for false arrest if he can establish that he had 'arguable probable cause' to arrest the plaintiff."  Garcia v. Doe, 779 F.3d 84, 92 (2d Cir. 2014).  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  Zalaski v. City of Hartford, 723 F.3d 382, 390 (2d Cir. 2013).  Here, Defendants have not demonstrated that summary judgment is warranted on the question of qualified immunity in the context of Plaintiff's false arrest claim because they have not demonstrated as a matter of law that there was arguable probable cause to arrest Plaintiff, for substantially the reasons stated above.  Defendants argue that the holding in Garcia compels a finding of qualified immunity here, but the facts at issue in Garcia were materially different.  In that case, Plaintiffs were actually and immediately blocking vehicular traffic, admittedly a

violation of law, and asserted as a defense to qualified immunity only that the arresting officers should have credited Plaintiffs' subjective belief that their activity had been authorized by the police.  Garcia, 779 F.3d at 92-93.  Here, by contrast, Plaintiff has demonstrated the existence of a triable issue of fact on the question of whether any probable cause existed under any criminal statute, making Garcia inapposite.

Defendants' motion for summary judgment on Plaintiff's false arrest claim (Counts One and Four of the SAC) is therefore denied.

Plaintiff's Claims for Assault, Battery, and Excessive Force

Plaintiff claims that the circumstances of her arrest involved being handcuffed tightly, an allegedly excessive use of force that violated her Fourth and Fourteenth Amendment rights.  Plaintiff also states a claim for assault and battery based on the same facts, which is duplicative of her excessive force claim.  See Higginbotham v. City of New York, 105 F. Supp. 3d 369, 377 (S.D.N.Y. 2015).  Determining whether a use of force is excessive requires balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Graham v. Connor, 490 U.S. 386, 398 (1989).  In evaluating claims for excessive force based on handcuffing, courts in this Circuit generally consider: (1) whether "the handcuffs were unreasonably tight, (2) [whether] the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists."  Lynch ex rel. Lynch v. City of Mount Vernon, 567 F. Supp. 2d 459, 468–69 (S.D.N.Y. 2008) (emphasis and alteration omitted).

Plaintiff has provided documentary evidence of substantial injuries to her wrists, including swelling and discoloration lasting several weeks, which she alleges resulted from her

handcuffing. See Hudson v. McMillian, 503 U.S. 1, 7 (1992) (noting that the amount of force, rather than the injury sustained, is the focus of the inquiry, but holding that "the extent of injury suffered by [the plaintiff] is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation" (internal quotation marks omitted)). Further, Plaintiff repeatedly complained to officers that her handcuffs were too tight at the time of her arrest and transport to the precinct, and the officers did not alleviate the condition. A reasonable jury could therefore conclude that the injuries Soto suffered resulted from an unnecessary use of force. See Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987) (testimony that bruises lasted a couple of weeks are sufficient to "prevent the summary dismissal of a § 1983 claim for excessive force").

Defendants also argue that they are entitled to qualified immunity on Plaintiff's excessive force claim. "It is well established that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." Stephenson v. Doe, 332 F.3d 68, 77 (2d Cir. 2003). Here, however, if a jury were to credit Plaintiff's evidence about her complaints of excessively tight handcuffing and resulting injury, Defendants would not be entitled to qualified immunity on Plaintiff's excessive force claim. See Breen v. Garrison, 169 F.3d 152, 153 (2d Cir.1999); Sterlin v. City of New York, 2014 WL 2560595, at *5 (S.D.N.Y. June 6, 2014).

Accordingly, Defendants' motion for summary judgment on Plaintiff's excessive force claim (Count Five of the SAC) is denied.

Plaintiff's Claim for First Amendment Retaliation

To establish a claim for retaliation under the First Amendment, a plaintiff must

show: "(1)[s]he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by [her] exercise of that right; and (3) defendants' actions effectively chilled the exercise of [her] First Amendment right." Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir.2001).  Defendants assert qualified immunity as a defense.

The scope of the First Amendment right to record police activity is the subject of considerable debate.  See Rivera v. Foley, 2015 WL 1296258, at *9 (D. Conn. Mar. 23, 2015) (surveying cases and the active split among the Courts of Appeals over this question).  To find that officers are entitled to qualified immunity, however, the Court need not resolve that debate: its existence is enough to demonstrate that there was not clearly established law establishing a right to photograph police activity at the time of Plaintiff's arrest.  See, e.g., Mesa, 2013 WL 31002, at *25 ("[N]o Second Circuit case has directly addressed the constitutionality of the recording of officers engaged in official conduct.")  The lack of clearly established law entitles Defendants to summary judgment on Plaintiff's retaliation claim on the basis of qualified immunity.  See Anderson v. Creighton, 483 U.S. 635, 640 (1987) (holding that, for a right to be "clearly established" for the purposes of a qualified immunity analysis, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"); Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994) ("The doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." (internal quotation marks and citations omitted).)  Defendants' motion for summary judgment is granted as to Plantiff's First Amendment retaliation claim (Count Two of the SAC).

Plaintiff's Claim against the City of New York

A municipality is subject to liability under Section 1983 only if the plaintiff's injury is the result of municipal policy, custom, or practice. Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A city may not be held liable solely "by application of the doctrine of respondeat superior." Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986). "Monell's policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir.2007). "[A] municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Connick v. Thompson, 563 U.S. 51, 61 (2011) (quoting Canton v. Harris, 489 U.S. 378, 388 (1989)). To satisfy the deliberate indifference standard, the plaintiff must show that the officer's actions were "clearly unreasonable in light of the known circumstances." Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 648–49 (1999). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 62 (quoting Bd. of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 409, (1997)).

Plaintiff's theory of Monell liability, as described in her memorandum of law in opposition to Defendants' motion for summary judgment, is that the NYPD has failed to train its officers to deal appropriately with members of the press who are not credentialed by the NYPD. Defendants highlight the dearth of evidence adduced by Plaintiff in support of her Monell claim in arguing for summary judgment, and argue that Plaintiff has not made a sufficient showing as a

matter of law.  See Nora Beverages, Inc., 164 F.3d at 742.

In support of her Monell claim, Plaintiff relies extensively on the testimony of two non-party witnesses who are not affiliated with the NYPD or the City of New York: a former general counsel for the National Press Photographers Association, who testified that the NYPD does not have an adequate training program for dealing with the press, and a photojournalist, who testified based on his personal experience that he has observed NYPD officers obstructing photojournalists.  In connection with this case, Plaintiff also took the deposition of NYPD Deputy Chief Kim Royster, who testified that NYPD officers are trained to understand that the media does not consist solely of NYPD-credentialed journalists.  See Heinegg Decl., Ex. 10, at 52 (Deposition of Kim Royster).

Taking the record as a whole, the Court concludes that Plaintiff has failed to raise a triable question of fact on her Monell claim.  Plaintiff's third-party evidence does not plausibly demonstrate the existence of a pattern or practice of misconduct by NYPD officers.  Neither of the witnesses purports to testify as an expert on this issue, and their first-hand knowledge of NYPD practices is slim.  The unrebutted testimony of Chief Royster demonstrates the existence of a training program aimed at the exact issue Plaintiff claims the NYPD has failed to train its officers to handle – the uncredentialed press – and Plaintiff cannot maintain a Monell claim by asserting only that the NYPD has negligently administered its existing training program, or that the NYPD's existing program could be improved.  City of Canton, Ohio v. Harris, 489 U.S. 378, 390-91 (1989) ("It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.").

Accordingly, Defendants' motion for summary judgment as to Plaintiff's <u>Monell</u> claim for municipal liability (Count Three of the SAC) is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted as to Counts Two, Three, Six, Seven, Eight, Nine, and Ten of the SAC, and denied as to Plaintiff's claims for false arrest and excessive force (Counts One, Four, and Five of the SAC). This Memorandum Opinion and Order resolves docket entry no. 72.

The final pre-trial conference in this matter is scheduled for March 24, 2016, at 11:30 a.m.

SO ORDERED.

Dated: New York, New York
      March 6, 2017

  /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge